UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| MARTIN CENSOR, | \* | 3:11-CV-0597 |
|  | \* |  |
| Plaintiff, | \* |  |
|  | \* | MEMORANDUM OPINION |
| -vs- | \* |  |
|  | \* | AND ORDER |
| ASC TECHNOLOGIES OF CONNECTICUT, L.L.C., and HR.360, INC., | \* |  |
|  | \* |  |
| Defendants. | \* |  |
|  | \* |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

There is one unresolved issue to be decided by the court. The issue is whether prejudgment interest should be awarded to the plaintiff and, if so, to commence on what date and to be applied in what manner. The parties have thoroughly briefed the issue and I have read their submissions.

Defendants contend that prejudgment interest is entirely inappropriate, although admitting that the question brings into play equitable considerations. Plaintiff seeks interest at the statutory rate of 10% running from December 17, 2010, the date the joint venture was terminated by ASC.

Defendants complain with some vigor that I failed to adhere to all the rulings of another Article III judge who partially ruled on a summary judgment motion before the jury trial commenced. I confess to having done just that. Pretrial motion rulings, whether entered by the trial judge or another judge, are not final judgments. They are binding on no one. The doctrine of the "law of the case", we all know, has no application to actions in the trial court, as the matter proceeds. Any ruling before trial as well as during the trial is subject to change.

Defendants advance frankly frivolous arguments that plaintiff was required to file a motion requesting reconsideration from the previous judge and that I had no authority to rescind or modify any of the previous rulings. The Federal Rules of Civil Procedure do not allow a "motion to reconsider" for orders that are not final. See <u>Ass'n for Retarded Citizens of CT, Inc. v. Thorne</u>, 68 F.3d 547, 553 (2d Cir. 1995) (noting that the courts generally consider a motion for

reconsideration to be either a Rule 59(e) motion to amend a judgment or a Rule 60(b) motion for relief from a final judgment or order); *see also* Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993), and In re Trout, 984 F.2d 977, 978 (8th Cir. 1993) (warning counsel that the Federal Rules of Civil Procedure do not provide for a motion for reconsideration and directing counsel to properly designate a motion under the rule authorizing the motion). The process of seeking reconsideration could be transformed into an endless chain of motions, filing a motion to reconsider the denial of the motion to reconsider, *ad infinitum*. As then Chief Judge Loken of the Eighth Circuit observed in his opinion in Wilkins v. Hartford Life and Accident Ins. Co., 299 F.3d 945, 948 (8th Cir. 2002): "Such motions [to reconsider] are frequently a futile waste of time for both the parties and the trial court." *See also* Shrader v. CSX Transp., Inc., 70 F.3d 255, 256–57 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Thus, plaintiff should not be criticized for not filing a motion to reconsider. He should not have filed any such motion.

During the course of any trial, circumstances can change. The judge and the jury listen to the evidence and determine the credibility of the witnesses and the weight of the evidence. Defendants argue that I acted "unilaterally" in my rulings. I plead guilty to that as well. That is the very nature of being a trial judge. We are not able to consult with learned colleagues such as when we sit on a circuit panel. I was assigned to try the case and I tried it "unilaterally." I would not be consulting with another judge to provide input.

I sent a memorandum (on file) to counsel sometime before I traveled to Hartford, reporting to counsel what I thought were the remaining issues and explaining that my review of the file might lead me to different conclusions than the judge who presided over the summary judgment motion. Among other comments, I stated: "There was a fiduciary relationship. The order sets out that there is no remaining claim as to ASC's alleged diversion of assets to other ASC business entities. Frankly, I think the judge should not have ruled on this in the absence of seeing an accounting. In the absence of such an accounting, I think that issue will still go to the jury." It did indeed go to the jury.

Defendants were certainly not ambushed or unfairly prejudiced as I kept counsel fully informed of my thoughts before and during the trial. The trial proceeded in a rather leisurely

manner as we did not work at all on a Friday during trial, in recognition of the religious beliefs of the plaintiff and at least one of his lawyers.

At no time before or during the trial did the defendants produce an accounting that was sufficient to meet the responsibilities of ASC. ASC had been ordered to make the accounting in the summary judgment ruling and, in my memorandum, ASC was directed to accomplish the accounting as soon as possible and "certainly before any settlement conference." ASC failed to do this.

All counsel and the parties clearly knew that the alleged diversion of assets was to HR 360, Inc. The jury was obviously satisfied that there was such a diversion. Had this been a trial to the court, I would have so found as well.

I also told counsel in the same memorandum that there was an agreement by ASC to pay plaintiff $6,000 per month from the joint venture after December of 2008. I raised the question whether that had been paid. The evidence at trial was that it had not been paid. ASC never explained why not.

It was undisputed that a joint venture existed between plaintiff and ASC. Under Connecticut law, members of a joint venture, like partners, have very important fiduciary responsibilities toward each other. The responsibility to fairly wind up a joint venture is that of the withdrawing "partner." That entity was ASC. As I advised counsel in my memorandum: "ASC is allowed to have withdrawn from the venture, subject to an accounting and a 'winding up' such as you would have in the normal partnership situation." ASC had promised plaintiff in December of 2010 that an accounting and "winding up" would be completed yet that year and failed to do so. ASC had all the financial records of the joint venture, including bills paid and payments from customers. Plaintiff had none of that information. ASC decided what expenditures to charge to the joint venture and acted with virtually blank checks.

Defendants contend that the question of whether HR 360, Inc. was the "alter ego" of ASC should have been submitted to the jury as a special interrogatory. Yet defendants proposed no such instruction and it is now too late to do so. Any such argument is, in any event, much ado about little. The undisputed facts were that (1) there were two stockholders in ASC and they acted as the sole corporate officers and directors; (2) the same two people incorporated HR 360

3

and were the sole stockholders, directors, and officers of HR 360 while the joint venture was still in existence; (3) the same two people and ASC caused the customer or client list of the joint venture to be supplied to and used by HR 360 to solicit and to obtain customers of the joint venture; (4) HR 360 solicited the joint venture customers and claimed to have a better product than the joint venture had; (5) HR 360, ASC, and the two individuals reaped great financial rewards by virtue of copying to a significant extent the business methods and research materials which had been owned by plaintiff prior to the formation of the joint venture; and (6) the two individuals had obviously been planning in secret for some time during the course of the joint venture to terminate the joint venture and appropriate the products of the joint venture, as well as the property rights of plaintiff. The evidence was clear that the new corporation was formed and operated with a plan to divert assets of the joint venture, including the property rights of the plaintiff, acting with the assistance of another corporation, ASC, a member of the joint venture known as Benefits Essentials.

     Defendants now complain that the verdict form did not ask the jury to decide whether ASC or HR 360 wrongfully detained any monies that were due to plaintiff. Defendants did not request any jury interrogatories and thus cannot complain about any question that they now claim should have been asked. In addition, the argument of defendants now flies in the face of what their attorney stated in open court, in the presence of the jury and on the record, namely that ASC admitted owing plaintiff $29,426.95 since the dissolution of the joint venture, none of which was paid or even tendered previously. Defendants' attorney invited the jury to award such sum to plaintiff. Defendants are bound by this. In addition, I instructed the jury, without objection, that the $29,426.95 was an admitted liability.

     It is true that the plaintiff in his complaint advanced his case largely on the question of patent infringement. He also clearly alleged, however, inequitable conduct in connection with the joint venture and the winding up of the same. In my memorandum (referred to above), I also set forth the following: "Plaintiff has a valid copyright as to the collective work of Benefits Essential [sic], including content authored by the plaintiff, by Shapiro (one of the two stockholders in ASC and HR 360), by Ceconi (the other stockholder in the two corporations), and by employees and contractors of ASC. An issue of fact exists as to whether plaintiff's

4

copyright extends beyond the five pages as a 'true representation' of Benefits Essentials provided by the Copyright Office. The valid copyright to the collective work is limited to those portions of the work that are original."

During the course of the trial, I changed my mind (to the benefit of the defendants) and found that the plaintiff had not offered sufficient evidence to show that he "jumped through the necessary hoops" to be able to assert a cause of action for patent infringement. Thus, plaintiff was deprived of the very valuable benefits of a patent infringement case, including the recovery of attorney fees. He lost this based on what might be called a legal loophole. None of this changes the fact that plaintiff was operating Benefits Essentials in a very successful manner with his intellectual products long before the joint venture was formed with ASC. It does not change the fact that the joint venture written agreement clearly provided that plaintiff was to retain all copyrights as to all materials. Defendants used, to their great financial advantages, a significant portion of materials that plaintiff had sought to copyright. All these matters are entitled to some consideration in considering equitable principles in deciding the matter of prejudgment interest.

The jury awards themselves were very modest. Had this been a trial to the court, I would have awarded plaintiff a great deal more money than the jury verdict awards. Defendants' attorney did an excellent job defending his clients against what might and perhaps should have been awarded in damages. He made the best of the very bad situation in which the defendants had placed themselves.

C.G.S.A. 37-3a allows interest to be recovered in civil actions "as damages for the detention of money after it becomes payable." The statutory rate is 10% and no more, indicating that a court, based upon principles of equity, may order a lesser rate.

"The purpose of an award of interest is to compensate a party for a wrong . . . . Such an allowance is primarily an equitable determination within the discretion of the trial court . . . ." Westport Taxi Serv., Inc. v. Westport Transit Dist., 664 A.2d 719, 740 (Conn. 1995) (quoting from Nielsen v. Wisniewski, 628 A.2d 25, 28 (Conn. App. Ct. 1993)). I believe some significance should be attached to the fact that the injuries and damages sustained by plaintiff did not come from interactions with a stranger or a casual third party. They came from his "partners" and "friends" who had very important fiduciary obligations. The plaintiff had placed a great deal

of trust in ASC and its stockholders. Such important obligations are not to be lightly disregarded.

In the District of Connecticut, the court should, in determining whether interest should be ordered, determine, at least in part, whether the detention of the money was or was not wrongful under the circumstances. The court has the task to determine whether the "interests of justice require the allowance of interest as damages for the loss of use of money." Bertozzi v. McCarthy, 323 A.2d 553, 55 (Conn. 1973). "Although bad faith is one factor that the court may look at when deciding whether to award interest under 37-3a . . . in the context of the statute, 'wrongful' is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so." Ferrato v. Webster Bank, 789 A.2d 474, 477 (Conn. App. Ct. 2002). I find that the defendants "hid the ball", failed to provide any timely accounting (after having promised in writing to do so promptly), and acted wrongfully. I also find that their conduct was in bad faith. They exercised the sole right (which they did not have under the joint venture agreement) to hire and fire employees and made all decisions as to what expenses to charge to the joint venture, including entertainment, travel, professional fees, including legal fees, and all other claimed business expenses. ASC had all the books and records and the plaintiff had virtually none. The defendants treated the defendant unfairly and in a grossly inequitable manner. The court was impressed during the trial with the business acumen of the two stockholders in ASC and HR 360. They appeared to be highly sophisticated. The plaintiff, although having a law degree, appeared as a person who was very unsophisticated and actually naive in the business world.

Under all the circumstances, including the daily observations made by the court at trial, prejudgment interest at 10% per annum is clearly due the plaintiff.

The detention of the money, if found to be wrongful (as I have so found), must be ordered from the date the court determines, in the exercise of sound discretion, that the money was due and payable. Northrop v. Allstate Ins. Co., 720 A.2d 879, 885 (Conn. 1998). There is, of course, always some difficulty in determining the actual sum due in any winding up process. Here, however, the defendants knew they owed plaintiff money, made no accounting, and frustrated any attempts by the plaintiff to be paid or to have an accounting despite demands on behalf of

plaintiff. Although I do not intend to set aside the verdict of the jury, I find that the actual damages to which plaintiff was entitled were significantly higher than the jury verdict. He has been forced to employ two attorneys to bring this matter to a head and he will make no recovery for attorney fees. It is both necessary and equitable to award prejudgment interest on the jury award. The interest at 10% per annum shall commence to run on January 17, 2011, a date 30 days from the date ASC withdrew from the joint venture.

The annual interest rule is to be applied. In other words, the interest is to be computed each year and added to the principal. Thus, the interest shall be computed as at January 17, 2012, and added to the principal. Such compounding is appropriate where the wrongful detention of money was malicious, willful, or grossly negligent, as I have so found. Fox v. Schaeffer, 41 A.2d 46, 50 (Conn. 1944). The total sum shall again bear interest at 10% per annum until January 17, 2013, when the computation shall be made again in the manner described above. The interest shall continue to run until entry of final judgment herein. Thereafter, interest as provided by law, namely 28 U.S.C. § 1961, as amended, shall commence to run.

Upon receiving a proper accounting for costs and disbursements, the clerk shall tax costs in favor of the plaintiff.

A judgment shall be entered in accord with this memorandum opinion and order.

Dated this 23rd day of February, 2013.

BY THE COURT:

/s/ Charles B. Kornmann
CHARLES B. KORNMANN
United States District Judge